HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
(E-mail: Hilary_Potashner@fd.org)
ERIN M. MURPHY (Bar No. 285087
(E-Mail: Erin_Murphy@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5310
Facsimile: (213) 894-0081

Attorneys for Defendant
ROBIN DIMAGGIO

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROBIN DIMAGGIO,<br><br>　　　　Defendant. | Case No. 18-891-DMG<br><br>**SECOND *EX PARTE* REQUEST TO MODIFY BOND CONDITION** |

Defendant, Robin DiMaggio, by and through his counsel of record, Deputy Federal Public Defender, Erin Murphy, hereby requests that this court modify his bond condition to remove the electronic monitoring condition so that Mr. DiMaggio can seek employment.

　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　HILARY POTASHNER
　　　　　　　　　　　　　　　　　　Federal Public Defender


DATED: June 4, 2019　　　　　　By　*/s/ Erin Murphy*
　　　　　　　　　　　　　　　　　　ERIN MURPHY
　　　　　　　　　　　　　　　　　　Deputy Federal Public Defender

1

## SECOND REQUEST TO MODIFY BOND CONDITION

On December 10, 2018, Mr. DiMaggio made his initial appearance. The Court granted bail with conditions, including electronic monitoring.[1] (ECF No. 1 at 2). On May 20, 2019, through counsel, Mr. DiMaggio sought to modify the condition requiring electronic monitoring. (ECF No. 37.) He sought to remove that condition so that he could work professionally as a drummer. (*Id.*) This Court denied that motion. (ECF No. 39.) New circumstances--namely, more concrete employment prospects--prompt this second request.

Mr. DiMaggio continues to care for his ill mother. Since filing the last request, counsel met with Mr. DiMaggio's mother, who appears to be bedridden and unable to care for herself, including preparing meals, using the restroom, bathing, and administering medicine. (Decl. of Erin Murphy, ¶2.) Mr. DiMaggio is her caretaker, and thus, tends to her during the day. (*See id.*)

To support himself financially, Mr. DiMaggio hopes to continue his work as a professional drummer.[2] (*See* Ex. A to Erin Murphy Decl.) Counsel has confirmed that Mr. DiMaggio has hiring prospects to drum at a recording studio in Los Angeles. (Decl. of Erin Murphy, ¶3.) This would allow him to work more flexible hours at night, and continue to care for her during the daytime. With the electronic monitor, however, the range of motion required for drumming is significantly diminished, and drumming can be physically painful. (*Id.* at ¶5.)

The government objects to the request. (*See* Decl. of Erin Murphy, ¶7.) In its

---

[1] It should be noted that Pretrial Services' bail recommendation at initial appearance did not include electronic monitoring as a condition of bail. Electronic monitoring was a condition proposed to the Court by the parties.

[2] In the previous submission to the Court, the undersigned indicated her belief that drumming was Mr. DiMaggio's only job over 42 years. That was incorrect and the undersigned was mistaken. The undersigned apologizes to the Court for that error, and now understands that Mr. DiMaggio has worked other jobs, including as a Musical Director for the United Nations, as the government acknowledges, and as a songwriter and producer. However, the undersigned understands that drumming has been his primary source of income over the course of his career. (Decl. of Erin Murphy, ¶5.)

Opposition to the previous Request to Modify Bond, the government argued that Mr. DiMaggio remains a flight risk.  (ECF No. 38.)  The government relies, in part, on evidence that Mr. DiMaggio told counsel in a related civil matter--*one month before* he was arrested--that he intended to move to Paris.  (*Id.* at pp. 2–3.)  The Complaint Affidavit indicates, however, that Mr. DiMaggio never purchased a ticket to Paris.  (ECF No. 1 at pp. 23–24.)  Further, when Mr. DiMaggio was released on bail, he surrendered his passport to Pretrial Services.  (ECF Nos. 5, 9.)  Also, while on pretrial release, the undersigned understands that Mr. DiMaggio has traveled with permission from Pretrial Services, and returned.  (Erin Murphy Decl., ¶6.)  Besides the allegations here--which are to be afforded the least weight at this stage--there is no evidence of a *serious* risk of flight.  18 U.S.C. § 3142(f)(2)(A).

Meanwhile, Mr. DiMaggio's son, Christian DiMaggio, agreed to serve as a surety for $30,000 on his father's behalf.  (*See* Bond Conditions - ECF No. 16.)  This is a significant amount of money to his adult son, who works full-time, six days a week for an ATM servicing company.  (Erin Murphy Decl., ¶3.)  Also, Mr. DiMaggio is his mother's caretaker;  his son works full-time, and his sister lives in Nevada.  (*Id.* at ¶¶2–3.)  Fleeing would jeopardize the health and financial well-being of his own adult child and ailing mother.  The risk of such consequences sufficiently assures Mr. DiMaggio's appearance in this matter without the need of an ankle monitor.

Pretrial Services confirms that Mr. DiMaggio remains in compliance with his bond conditions and takes no position on the instant request.

                            Respectfully submitted,

                            HILARY POTASHNER
                            Federal Public Defender

DATED:  June 4, 2019         By  */s/ Erin Murphy*
                            ERIN MURPHY
                            Deputy Federal Public Defender

## DECLARATION OF ERIN MURPHY

I, Erin Murphy, hereby state and declare as follows:

1. I am the attorney of record for defendant, Robin DiMaggio.

2. Mr. DiMaggio is serving as a caretaker for his mother during the day. I visited with his mother at her home. She appeared to be bedridden. She confirmed to me, through the assistance of a certified French interpreter, that she relies on Mr. DiMaggio to assist her with her basic needs every day. This includes eating, bathing, using the restroom, and taking her medications.

3. I spoke with Mr. DiMaggio's son, Christian DiMaggio. He confirmed that he works full-time six days a week for an ATM servicing company. He further confirmed that Mr. DiMaggio's sister lives in Henderson, Nevada.

4. I spoke with Mike Fennel. I understand that he is a Head Engineer at a recording studio in Los Angeles. He confirmed to me that he would have work for Mr. DiMaggio as a drummer in the evenings and early mornings.

5. I understand that Mr. DiMaggio cannot drum with an ankle bracelet without it being painful. I understand that drumming has been his primary source of income over his career.

6. On June 3, 2019, Pretrial Services Officer Manuel Ibanez confirmed to me that Mr. DiMaggio has been in full compliance with his bond conditions. He further informed me that Pretrial Services allowed Mr. DiMaggio to travel and he returned. Pretrial Services does not take any position on the instant request.

7. On May 7, 2019, I contacted Assistant United States Attorney Poonam Kumar. Ms. Kumar indicated that the government objects to this request.

8. Attached here as Exhibit A is a PDF-printout of a Wikipedia entry for Mr. DiMaggio, which I obtained on June 3, 2019.

///

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATE: June 4, 2019                    By  */s/ Erin Murphy*
                                          ERIN MURPHY