HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
(E-mail: Hilary_Potashner@fd.org)
ERIN M. MURPHY (Bar No. 285087
(E-Mail: Erin_Murphy@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5310
Facsimile: (213) 894-0081

Attorneys for Defendant
ROBIN DIMAGGIO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>ROBIN DIMAGGIO,<br><br>　　　　　Defendant. | Case No. 18-891-DMG<br><br>**THIRD *EX PARTE* REQUEST TO MODIFY BOND CONDITION; DECLARATION OF COUNSEL; DECLARATION OF MIKE FENNEL** |

Defendant, Robin DiMaggio, by and through his counsel of record, Deputy Federal Public Defender, Erin Murphy, hereby requests that this court modify his bond condition to remove the electronic monitoring condition so that Mr. DiMaggio can seek employment. The government opposes this request.

　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　HILARY POTASHNER
　　　　　　　　　　　　　　　　　Federal Public Defender

DATED: June 27, 2019　　　　By　*/s/ Erin Murphy*
　　　　　　　　　　　　　　　　　ERIN MURPHY
　　　　　　　　　　　　　　　　　Deputy Federal Public Defender

1

THIRD REQUEST TO MODIFY BOND CONDITION

On December 10, 2018, Mr. DiMaggio made his initial appearance. The Court granted bail with conditions, including electronic monitoring.[1] (ECF No. 1 at 2). On May 20, 2019, through counsel, Mr. DiMaggio sought to modify the condition requiring electronic monitoring. (ECF No. 37.) He sought to remove that condition so that he could work as a drummer. (*Id.*) This Court denied that motion. (ECF No. 39.) On June 5, 2019, Mr. DiMaggio presented more concrete job prospects to this Court and an update on his mother's health condition. (ECF No. 40.) He again requested the removal of the ankle monitoring condition. (*Id.*) This Court modified his bond allowing Mr. DiMaggio to remove the ankle monitor so long as Mr. DiMaggio could provide a written employment contract signed by Mike Fennel, the Head Engineer at a studio, that would guarantee 20 hours of drumming per week, and further provide a weekly schedule of work and income. (ECF No. 42.) New circumstances--namely, a fuller understanding from Mr. Fennel of how employment for musicians in the recording industry works--prompt this third request.

After the Court issued its order modifying Mr. DiMaggio's bail conditions, the undersigned consulted with Mr. Fennel about the Court's requirements. (Erin Murphy Decl. ¶2.) Mr. Fennel informed the undersigned of practical challenges to satisfying the Court's requirements, which he summarized in the attached declaration. (Decl. of Mike Fennel.) Specifically, in his experience in the music industry since 1985, musicians like drummers work in recording studios "on an as-needed basis, and generally for short periods of time like three to eight hours, depending on the project." (*Id.* at ¶2.) Also, based on his experience in the music industry, it is rare for recording studios to enter into contracts with such a musician. (*Id.*) Rather, the availability of jobs for musicians like drummers fluctuates and "depends on which artists are

---

[1] It should be noted that Pretrial Services' bail recommendation at initial appearance did not include electronic monitoring as a condition of bail. Electronic monitoring was a condition proposed to the Court by the parties.

2

recording in our studio and when." (*Id.* at ¶3.) As a result, he often has only an hour's notice that an artist needs a musician. (*Id.*) In those instances, he would call musicians until one is available. (*Id.*)

Based on this information from Mr. Fennel, it would be difficult for Mr. DiMaggio to work as a drummer for him consistent with the current bail modifications. First, it does not appear that Mr. Fennel could guarantee--either via contract or otherwise--any work hours per week because the available work in the studio fluctuates at any time. Because Mr. Fennel may only have short notice of potential employment, Mr. DiMaggio would be unable to seek approval from Pretrial Services for that particular job a week before. As a result, Mr. DiMaggio may lose work opportunities.

Also, requiring Mr. DiMaggio to work a certain number of hours per week may inadvertently limit his ability to work. As Mr. Fennel stated, jobs for drummers may require only three or more hours. (Decl. of Mike Fennel, ¶2.) At the same time, as Mr. Fennel stated, Mr. DiMaggio is viewed as a top drummer in their industry. (*Id.* at ¶5.) Accordingly, Mr. DiMaggio could command up to three times the standard industry rate for a drummer, which is around $350 per hour. (*Id.* at ¶5.) As a result, Mr. DiMaggio has the ability to earn significant money, but not through a typical 8-hour work day. Meanwhile, as stated in the prior application to modify bail, Mr. DiMaggio cares for his bedridden mother during the day time. (ECF No. 40, 2d Ex Parte App. to Modify Bail Conditions, Erin Murphy Decl. at ¶2.) While perhaps sporadic, working as a drummer on an as-needed basis for hours at a time will allow him to earn money while providing the flexibility necessary to continue caring for his mother.

Finally, maintaining Mr. DiMaggio's drumming skills requires daily practice. (*Id.* at ¶5.) Without practice, he may be unprepared to drum at the required level at a moment's notice. (*Id.*) In other words, with the ankle monitor on, his primary income-earning skill is diminished. Moreover, spending months unable to practice could impede Mr. DiMaggio's long-term income-earning potential and opportunities.

For these reasons, the undersigned requests that the Court modify Mr.

DiMaggio's bail conditions to allow him to remove his ankle monitor so that he may work as a drummer. Mr. Fennel has agreed to provide a time-log for any hours that Mr. DiMaggio works. The Court could further order such a log from any other studio that hires Mr. DiMaggio, and require that Mr. DiMaggio provides Pretrial Services with a weekly status update on his employment, along with any time-logs and/or paystubs.

Pretrial Services confirms that Mr. DiMaggio remains in compliance with his bond conditions and does not oppose the instant request. (Erin Murphy Decl. ¶4.) The government opposes this request. (*Id.* at ¶5.)

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: June 27, 2019          By  */s/ Erin Murphy*
                                  ERIN MURPHY
                                  Deputy Federal Public Defender

## DECLARATION OF ERIN MURPHY

I, Erin Murphy, hereby state and declare as follows:

1. I am the attorney of record for defendant, Robin DiMaggio.

2. After the Court issued its order modifying Mr. DiMaggio's conditions of release, I spoke to Mr. Mike Fennel about those conditions. He described to me the practical challenges to satisfying them, based on his experience in the music industry.

3. On June 26, 2019, I called Pretrial Services Officer Manuel Ibanez to obtain his position regarding removing the ankle monitor. His outgoing voicemail message indicated that he is out of the office until July 5, 2019.

4. After calling Officer Ibanez, I called Pretrial Services Officer Alexis Ochoa, who I understand also supervises Mr. DiMaggio. She indicated that she had no opposition to removing the ankle monitor, and to her knowledge, there have been no issues with Mr. DiMaggio's compliance with his bond conditions.

5. On June 27, 2019, Assistant United States Attorney Poonam Kumar informed me that the government objects to the instant request.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATE: June 27, 2019          By  /s/ Erin Murphy
                                 ERIN MURPHY

## DECLARATION OF MIKE FENNEL

I, MIKE FENNEL, declare:

1. I work as a Head Engineer and Studio Manager at Universal Music Publishing in Los Angeles, California. I have worked there since 1985. Our company is a worldwide music publishing company, and we have a recording studio in Santa Monica, California. I manage that studio.

2. Our publishing company does not typically employ musicians. Generally, the record company for the artist pays the musicians. Musicians like drummers are not employed on a full-time basis. They work on an as-needed basis, and generally for short periods of time like three to eight hours, depending on the project. The pay depends on the artist, and may be either a flat fee or an hourly fee. Based on my experience in the music industry, there rarely is a contract for a musician who is playing an instrument for an artist in a recording studio.

3. In my experience, the availability of jobs for musicians like drummers fluctuates. Job availability depends on which artists are recording in our studio and when. For example, an artist may have a drummer or band that the artist usually uses for recording, but then there is an unexpected scheduling conflict. In those cases, I would contact the drummers with whom I am familiar, and if they are available, they will fill in. Or, an artist may ask for a specific drummer and, if I am familiar with that drummer, I will contact that musician and see if he or she is available to record when the artist is recording. Often, I have only have an hour's notice that the artist needs a specific type of musician. I then contact musicians until I find one who is available.

4. I am familiar with Robin DiMaggio. He has drummed at our studio in the past. I understand that he must wear a location monitoring device on his ankle. I understand that he is unable to play the drums with while wearing the monitoring device.

5. Mr. DiMaggio is an exceptionally talented drummer. He is viewed in our industry as one of the best in the world. By way of example, a typical payrate for a

drummer may be around $350 an hour. For someone of his talent level, he could command up to three times that amount. At his level, though, it is critical that he be able practice on a daily basis so that he can maintain his skill, and be ready to perform at a moment's notice.

6. If Mr. DiMaggio is able to play drums at Universal Music Publishing, I will provide a time-log for him to provide to his Pretrial Services officer that describes when he played and for how long.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 20, 2019, at Los Angeles, California.

/s/ SIGN NAME
[NAME OF DECLARANT]